BURKE HUBER, ESQ.
Nevada Bar No. 10902
**RICHARD HARRIS LAW FIRM**
801 South Fourth Street
Las Vegas, Nevada 89101
Phone: (702) 444-4444
Fax: (702) 444-4455
E-Mail: Burke@RichardHarrisLaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ELAINE GO, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>CLARK COUNTY; CLARK COUNTY DEPARTMENT OF AIR QUALITY; CLARK COUNTY OFFICE OF DIVERSITY; TED LENDIS, an individual; SHAWN MCCRARY, an individual; MARCI HENSON, an individual; LETTY BONILLA, an individual; SANDRA JEANTETE, an individual; DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive jointly and severally,<br><br>Defendants. | CASE NO: 2:19-CV-01775-RFB-DJA<br><br><br>**STIPULATION TO ALLOW PLAINTIFF LEAVE TO FILE A THIRD AMENDED COMPLAINT** |

1

Plaintiff, Elaine Go, by and through her counsel of record, Burke Huber, Esq., and Defendants, by and through their counsel of record, Scott R. Davis, hereby stipulate as follows:

Plaintiff recently received a right to sue notice from the EEOC and she shall be allowed leave to file a third amended complaint ("TAC") attached as Exhibit 1. Plaintiff shall file the attached TAC within ten (10) days of the signed order.

Dated this _____ 29th day of October 2020          Dated this _____ 29th day of October 2020.


By: ____/s/*Burke Huber*_____          By:____/s/*Scott R. Davis*_____
Burke Huber                                                 Scott R. Davis
Nevada State Bar 10902                           Nevada Bar No. 1565
RICHARD HARRIS LAW FIRM               Deputy District Attorney
801 S. 4th Street                                        500 South Grand Central Pkwy
Las Vegas, Nevada 89101                        Las Vegas, Nevada 89155-2215
Attorneys for Plaintiff                             Attorneys for Defendants


## ORDER

**IT IS HEREEBY ORDERED** that Plaintiff shall be allowed to file her Third Amended Complaint attached as Exhibit 1 within ten (10) days of the signed order.


DATED this 3rd day of November, 2020.


_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE

2

# EXHIBIT 1

# EXHIBIT 1

BURKE HUBER, ESQ.
Nevada Bar No. 10902
RICHARD HARRIS LAW FIRM
801 South Fourth Street
Las Vegas, Nevada 89101
Phone: (702) 444-4444
Fax: (702) 444-4455
E-Mail: Burke@RichardHarrisLaw.com
*Attorneys for Plaintiff*

**Exhibit 1**

# UNITNED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ELAINE GO, an individual; | CASE NO: 2-cv-01775-RFB-DJA |
| Plaintiff, | **THIRD AMENDED COMPLAINT FOR:** |
| vs. | |
| CLARK COUNTY, a political subdivision; TED LENDIS, an individual; SHAWN MCCRARY, an individual; MARCI HENSON, an individual; LETTY BONILLA, an individual; SANDRA JEANTETE, an individual; DOES 1 through 10; ROE ENTITIES 11 through 20, inclusive jointly and severally, | **(1) ADA – Discrimination/Failure to Accommodate Against Clark County** |
| Defendants. | **(2) ADA – Retaliation Against Clark County** |

**(1) ADA – Discrimination/Failure to Accommodate Against Clark County**
**(2) ADA – Retaliation Against Clark County**
**(3) Disability Discrimination – Violation of NRS 613.330 et. seq. Against Clark County**
**(4) FMLA Interference Against Clark County**
**(5) Intentional Infliction of Emotional Distress Against all Defendants**
**(6) Violation of Title 42 U.S.C. § 1983 Against Clark County**
**(7) ADA – Discrimination Against Clark County re: Termination**
**(8) ADA – Retaliation Against Clark County re: Termination**

1

COMES NOW, Plaintiff ELAINE GO, by and through their counsel, BURKE HUBER, ESQ. of the RICHARD HARRIS LAW FIRM, and for her causes of action against Defendants, complains and alleges as follows:

<u>JURISDICTION</u>

1.     At all times relevant, Plaintiff, ELAINE GO ("Plaintiff"), was and is a resident of Clark County, State of Nevada.

2.     At all times relevant, Plaintiff, was and is an employee of Clark County.

3.     At all times relevant herein, upon information and belief, Defendant, Clark County, is a political subdivision.

4.     At all times relevant herein, upon information and belief, Defendant, Ted Lendis (hereinafter "Defendant Lendis"), was and is an employee of Defendant Clark County with the title of supervisor and is a resident of Clark County, State of Nevada.

5.     At all times relevant herein, upon information and belief, Defendant, Shawn McCrary (hereinafter "Defendant McCrary"), was an employee of Defendant Clark County with the job title of management analyst/HR liaison and is a resident of Clark County, State of Nevada.

6.     At all times relevant herein, upon information and belief, Defendant, Marci Henson (hereinafter "Defendant Henson"; collectively "Defendants"), was an employee of Defendant Clark County with the job title Director and is a resident of Clark County, State of Nevada.

7.     At all times relevant herein, upon information and belief, Defendant, Letty Bonilla (hereinafter "Defendant Bonilla"), was an employee of Clark County with the job title of Principal and is a resident of Clark County, State of Nevada.

8.     At all times relevant herein, upon information and belief, Defendant, Sandra Jeantete (hereinafter "Defendant Jeantete"), was an employee of Defendant Clark County with the job title of Director and is a resident of Clark County, State of Nevada.

2

9. Venue is proper in this judicial district because the complained of conduct occurred in this judicial district.

10. The true names and capacities of the Defendants designated herein as Doe or Roe individuals, political subdivisions or corporations are presently unknown to Plaintiff at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of these defendants are ascertained, Plaintiff will amend this Complaint accordingly.

11. That at all times pertinent, Defendants were agents, servants, employees or joint venturers of Defendant Clark County and one another, and at all times mentioned herein were acting within the scope and course of said agency, employment, or joint venture, with knowledge and permission and consent of all other named Defendants.

12. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants were the agents, employees and representatives of the other Defendants and in doing the things hereinafter alleged were in part, acting within the scope and authority of such relationship, and in part, acting outside the scope and authority of such relationship, and as such each is responsible and liable in some manner for the occurrences herein alleged and were approximate cause of Plaintiff's damages as herein alleged.

13. At all times relevant, Plaintiff is and was employed by Defendants as an Air Quality Specialist.

## **AMERICANS WITH DISABILITIES ACT VIOLATIONS**

14. At all times mentioned in this Complaint, Plaintiff suffered from the following disabilities: (1) agoraphobia, (2) anxiety, and (3) panic disorders.

15. Plaintiff's disorders substantially limit the following major life activities: sleeping, thinking, caring for herself, performing manual tasks, speaking, breathing, concentrating, communicating, and working[1].

---

[1] See Exhibit B.

3

16. Plaintiff is an Air Quality Specialist whose essential functions include sitting at her desk, evaluating applications for a permit, approving applications for a permit and writing the permits.

17. Plaintiff is a qualified individual, who with accommodation, can perform the essential functions of her position as an Air Quality Specialist.

18. Plaintiff notified Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson of her disabilities and also requested accommodations such as placing Plaintiff's cubicle away from her supervisor, reducing Plaintiff's number of adverse assignments or high-profile cases, reducing the number of meetings between Elaine and her supervisor and/or allow a third party observer to be there during meetings, providing all task instructions in writing, allowing Plaintiff to work one to two days per week from home, allowing her sick time to visit with her therapist[2].

19. Plaintiff requested accommodations for her disability on the following dates:

   a. First Request: September 14, 2017[3],
   b. Second Request: November 8, 2017[4],
   c. Third Request: December 29, 2017,[5]
   d. Fourth Request: October 25, 2018[6],
   e. Fifth Request: January 17-28, 2019[7],
   f. Sixth Request: April 9, 2019[8].

20. Defendants Lendis, McCrary, Bonilla, Jeantete and Henson, denied Plaintiff's requests for accommodations and refused to recognize her disabilities on the following dates:

   a. Denial: October 23, 2017[9],
   b. Denial: December 20-21, 2017[10],
   c. Denial: December 22, 2017[11],
   d. Denial: November 30, 2018[12],

---

[2] See Exhibit B.
[3] See Exhibits A.
[4] See Exhibit B and C.
[5] See Exhibit D.
[6] See Exhibit E.
[7] See Exhibit F.
[8] See Exhibit G.
[9] See Exhibit H.
[10] See Exhibit I and J.
[11] See Exhibit K.

4

RICHARD HARRIS
LAW FIRM

e. Denial: June 14, 2019[13].

21. Plaintiff's request to be able to work from home one or two days a week was reasonable because Plaintiff's essential job functions could be performed remotely.

22. Plaintiff's request that her cubicle being placed away from her supervisor to minimize exacerbating conditions was reasonable because it required that the Defendant expend little to no resources to effect.

23. Plaintiff's request that Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson reduce Plaintiff's number of adverse assignments or high-profile cases was also reasonable because the workload could have been easily absorbed by employees with fewer tasks.

24. Plaintiff's request that Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson reduce the number of meetings between Elaine and her supervisor and/or allow a third party observer to be there during meetings was also reasonable because Plaintiff's supervisor could have easily written tasks in emails or other written form or simply sought a third party to observe and relieve Plaintiff's symptoms and suffering.

25. Plaintiff's request that all task instructions for tasks to be performed be given to her be in writing is reasonable because of Defendants' can email tasks, communicate via email and text message and use other available methods of communication.

26. Plaintiff's request that Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson allow her sick time to visit with her therapist is reasonable because it would have required little time, improved her symptoms and allowed her to work more freely without missing days due to suffering.

27. If Plaintiff's reasonable requests had been afforded by Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson, Plaintiff could have performed the essential

---

[12] See Exhibit L.
[13] See Exhibit M.

5

functions required as an Air Quality Specialist without suffering, harm and the need to take Family Medical Leave ("FMLA").

28. Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson, in fact, even refused to recognize Plaintiff's agoraphobia, anxiety and panic disorders as "disabilities" when they denied Plaintiff any accommodations.

29. Plaintiff's reasonable requests would have allowed Plaintiff to manage her anxiety, reduce her panic attacks, and effectively review and approve permit applications.

30. These reasonable requests would have resulted in Plaintiff performing at a higher level and reaching and exceeding her job's expectations and perform her position's essential functions.

31. Defendants, Clark County's, Lendis', McCrary's, Bonilla's, Jeantete's and Henson's refusal to even recognize Plaintiff as disabled and their denial of accommodations constitutes discrimination and a violation of the ADA.

32. Because of Plaintiff's disability, Defendants, Clark County's, Lendis', McCrary's, Bonilla's, Jeantete's and Henson's treated Plaintiff in a hostile manner and created a hostile work environment that was severe and pervasive.

33. Defendants Lendis, McCrary, Bonilla, Jeantete and Henson all worked together to deny Plaintiff the protections of ADA, NRS §613.330, and FMLA.

34. Defendant Jeantete, Director of the Office of Diversity, refused to recognize Plaintiff's (1) agoraphobia, (2) anxiety, and (3) panic disorders as disabilities and denied her any accommodations pursuant to ADA.

35. In November of 2017, Defendant Lendis left work in Plaintiff's queue while she was on FMLA, causing deadlines to expire An investigator from USDOL later stated that this is a violation of FMLA.

36. In November of 2017, Defendant Lendis left information about Plaintiff's FMLA leave in a folder designated for public records to be disclosed to the public.

6

37.   During the interactive process, Defendant Lendis recommended that Plaintiff's request for Leave Without Pay be denied because he claimed her work was "untimely."

38.   In February of 2018, Defendant Lendis accused Plaintiff of bias in her processing of applications and explicitly tied his comments to Plaintiff's requests for accommodations. Defendant Lendis stated that Plaintiff's initial request for accommodations was invalid. Plaintiff's job duties are affected as a result because this meant that Defendant Lendis had to approve all of Plaintiff's work.

39.   In August of 2018, Defendant Lendis marked Plaintiff down on her performance review for "Professionalism" because Plaintiff "refused to have a meeting under reasonable conditions." Plaintiff suffered a panic attack and had to leave work using FMLA, and this was held against her. Plaintiff's job duties and compensation are affected - this was the first time Plaintiff was marked down on a performance review, and it has been used as a launchpad for every subsequent criticism.

40.   In September of 2018, Defendant Lendis required Plaintiff to attend a "daily production meeting" with Defendant Lendis, to discuss her workload. No other employees are required to have daily meetings. This requirement exacerbates Plaintiff's condition further (Plaintiff asked for fewer meetings and more written instruction, and they insisted on more meetings and fewer written instructions as a punitive measure). Plaintiff's job duties are affected as a result — because of her accommodation requests, she is discriminated against and denied autonomy granted to every other employee in her position.

41.   In October of 2018, Defendant Lendis violated Clark County's Agreement to Remedy by leaving work assigned to Plaintiff during her FMLA leave. Elaine's job duties are affected - her work is now late as soon as she returns to work, leading to further disciplinary action.

42.   In December of 2017, informed Air Quality Director Defendant Henson that she could not return to work without accommodations. As a result, Defendant Henson reclassified Plaintiff's absences as "unauthorized" rather than "unscheduled" so that Defendant Henson

7

could terminate Elaine after 5 absences. Plaintiff then received the following disciplinary citations: Documented Oral Warning, Admonishment, Written Reprimand.

43.   In January of 2018, Defendant Henson denies Plaintiff's request for Leave Without Pay to attend a doctor's visit because Defendant Henson believed Elaine should have managed her leave balances better. Defendant Henson did not treat similarly situated employees in the same manner.

44.   In June of 2018, Defendant McCrary observed Plaintiff waiting for a ride after work. Shortly thereafter, Defendant Henson asked to see Plaintiff's driver's license. Defendant Henson did not ask any other employees and did not make a copy. When Plaintiff later asked why this happened, Defendant Henson stated that it's part of Plaintiff's job description, when the true purpose was to harass Plaintiff and find a way to terminate Plaintiff.

45.   In September of 2018, Defendant was required to attend a "daily production meeting" with her supervisor, Defendant Lendis, to discuss her workload. No other employees are required to have daily meetings. This requirement exacerbates Plaintiff's condition. (Plaintiff asked for fewer meetings and more written instruction, and they insisted on more meetings and fewer written instructions as a punitive measure).

46.   In October of 2018, Defendant Henson called Elaine to a meeting. Defendant Henson insisted the meeting is "non-disciplinary" and denied Plaintiff's request for union representation. Defendant Henson then berated Plaintiff for being "insubordinate" until Plaintiff had a panic attack and is forced to leave work.

47.   Defendant Henson insisted that any leave Plaintiff used for treatment must be scheduled in advance — which was incorrect per FMLA, if treatment is not scheduled/foreseeable. This was done in an effort to hinder Plaintiff's use of leave and discriminate against Plaintiff. Plaintiff's benefits are affected - delayed treatment leads to more absences on FMLA.

48.   In September of 2018, Defendant Henson calls Elaine to a meeting. Ms. Henson insists the meeting is "non-disciplinary" and denied Plaintiff's request for union representation.

8

Defendant Henson then berated Plaintiff and called her "insubordinate" until Plaintiff had a panic attack and is forced to leave work. This was a direct attempt to trigger Plaintiff's disability and force her to leave.

49. During the process of requesting ADA accommodations, Defendant Bonilla played a huge role and part in denying Plaintiff's requests because Defendant Bonilla claimed that Plaintiff was not disabled and refused to recognize Plaintiff's disabilities.

50. As a result of the ADA discrimination, failure to accommodate and ADA retaliation, Plaintiff was subjected to different terms and conditions of employment because of her disability. By refusing to recognize Plaintiff as disabled and denying Plaintiff's accommodations, (1) Plaintiff's health insurance was negatively affected, (2) Plaintiff lost seniority in her position, (3) Plaintiff lost vacation/sick accrual, (4) Plaintiff lost pension benefits, (5) Plaintiff's work was deemed late as soon as she returned from FMLA leave while similarly situated employees were given fresh applications with non-expired timelines; (6) Plaintiff was forced to use FMLA leave time, (7) Plaintiff was written up for untimely finishing her work while other employees were not for untimely work, and (8) on January 21, 2020, Defendants terminated Plaintiff's employment. (Plaintiff received new right to sue notice 10/21/2020).

51. This denial resulted in the following adverse employment actions: (1) Plaintiff's health insurance was negatively affected, (2) Plaintiff lost seniority in her position, (3) Plaintiff lost vacation/sick accrual, (4) Plaintiff lost pension benefits, (5) Plaintiff's work was deemed late as soon as she returned from FMLA leave while similarly situated employees were given fresh applications with non-expired timelines; (6) Plaintiff lost FMLA leave time, (7) Plaintiff was written up for untimely finishing her work while other employees were not for untimely work, (8) in December of 2017, Plaintiff wrote Defendant Henson and informed her that she needed accommodations for her disability; in response, Defendant Henson reclassified Plaintiff's absences as "unauthorized" rather than "unscheduled" so that they could terminate Plaintiff after five (5) absences, (9) Defendants disciplined Plaintiff because of her disability

9

and need for accommodations via oral and written warnings, admonishments and written reprimands; these were different terms and conditions specifically inflicted upon Plaintiff because of her disability, and (10) On or around October 24, 2019, Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson wrote Plaintiff up for insubordination, which would not have happened had she not requested accommodations for her disability.

52.  Defendants required Plaintiff to exhaust her FMLA leave as a result of their refusal to recognize her disability and denying her accommodations.

53.  Defendants disciplined Plaintiff because of her disability and need for accommodations via oral and written warnings, admonishments and written reprimands; these were different terms and conditions specifically inflicted upon Plaintiff because of her disability and request for accommodations.

54.  Defendants also required Plaintiff to use FMLA leave instead of granting her accommodations.

55.  On or around October 24, 2019, Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson wrote Plaintiff up for insubordination, which would not have happened had she not requested accommodations for her disability.

56.  On January 21, 2020, Defendants terminated Plaintiff's employment because of her disability.

57.  Defendants, Clark County's, Lendis', McCrary's, Bonilla's, Jeantete's and Henson's ADA violations, discrimination and failure to accommodate denied Plaintiff compensation and forced Plaintiff to miss 36 full weeks of employment and proximately Plaintiff to lose substantial wages.

58.  Defendants, Clark County's, Lendis', McCrary's, Bonilla's, Jeantete's and Henson's ADA violations, discrimination and failures to accommodate inflicted severe emotional distress, mental anguish and other damages upon Plaintiff.

59.  Plaintiff's wage loss, pension benefit losses, seniority losses, vacation/sick pay losses, and Plaintiff's emotional and mental distress losses were a direct and proximate result

10

of Defendants, Clark County's, Lendis', McCrary's, Bonilla's, Jeantete's and Henson's violations of the ADA, discrimination and failures to accommodate.

## FMLA VIOLATIONS

60. As a result of Defendants' failure to recognize Plaintiff as disabled, Plaintiff was forced to use FMLA leave time.

61. In or around September of 2017 through October of 2017, Plaintiff requested time off pursuant to the Family Medical Leave Act (FMLA) and Defendants granted said leave.

62. In or around September of 2018 through October of 2018, Plaintiff again requested FMLA leave and Defendants again granted said Leave.

63. At the time that Plaintiff requested and used FMLA leave, Plaintiff was entitled to take FMLA leave.

64. At the time that Plaintiff requested and used FMLA leave, Plaintiff provided sufficient notice of her intent to take leave.

65. Plaintiff used FMLA leave upon it being granted and Defendants Lendis, McCrary, Bonilla, Jeantete and Henson knew that Plaintiff had exercised her right to FMLA leave.

66. During Plaintiff's FMLA leave, Defendants Lendis, McCrary, Bonilla, Jeantete and Henson denied Plaintiff of her benefits of FMLA leave by interfering with Plaintiff's time off.

67. Defendant Lendis interfered with Plaintiff's FMLA by leaving work in Plaintiff's queue, assigning new work, failing to assign work to other employees and then demanding that the work be done immediately upon return.

68. This resulted in FMLA leave not truly functioning as intended, which is time off and being totally free from work.

69. As a result of exercising Plaintiff's rights under FMLA, Defendants Lendis, McCrary, Bonilla, Jeantete and Henson subjected Plaintiff to the following adverse employment actions: (1) counting absences against Plaintiff for benefits, promotions and discipline; (2) disciplining Plaintiff by writing her up upon return from FMLA leave; (3)

11

writing Plaintiff up for failing to finish all assignments in Plaintiff's queue upon returning; and (4) refusing to allow Plaintiff total freedom from work while on FMLA leave.

70. Defendants Lendis, McCrary, Bonilla, Jeantete and Henson committed these acts with the purpose and intent to punish Plaintiff and send a message that if Plaintiff takes FMLA leave, she will be punished with extra work that if not completed on time, will subject her to discipline or termination.

71. When Plaintiff failed to complete the extra tasks assigned to her by Defendant Lendis, she was reprimanded and written up.

72. Defendants Lendis, McCrary, Bonilla, Jeantete and Henson adverse treatment of Plaintiff because she exercised her protected right to FMLA leave, resulted in Plaintiff suffering from anxiety, and missing additional days from work.

73. Defendants Lendis, McCrary, Bonilla, Jeantete and Henson counted Plaintiff's absences against Plaintiff by passing her up for promotions, denying her vacation/sick pay accrual, being written up, and overall fair treatment afforded similarly situated employees who did not take FMLA leave.

74. Defendants Lendis's, McCrary's, Bonilla's, Jeantete's and Henson's interference with Plaintiff's FMLA, also resulted in more days missed, and this caused Plaintiff to lose out on retirement benefits, vacation and sick pay benefits.

## CIVIL RIGHTS VIOLATIONS

75. Plaintiff falls within the protected class of the disabled and Plaintiff has exhausted all of her administrative remedies required by the ADA.

76. Defendants are "persons" pursuant to Section 1983.

77. The Americans With Disabilities Act (ADA) is intended to benefit a class of persons who are disabled.

78. The ADA is a federal statute that creates enforceable rights and Congress has not foreclosed the possibility of Section 1983 remedy for violations of the ADA.

12

79. Defendant Clark County has a policy that (1) agoraphobia, (2) anxiety, and (3) panic disorders are not "disabilities" afforded protection of the ADA.

80. Defendant Clark County has a custom of punishing and interfering with employees that take medical leave afforded by the Family Medical Leave Act.

81. Defendant Clark County has failed to train its employees with respect to the ADA and FMLA.

82. Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla showed deliberate indifference towards Plaintiff's rights under the ADA and FMLA.

83. Defendant Clark County, Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla refused to recognize Plaintiff's agoraphobia, anxiety and panic disorders as disabilities protected by the ADA.

84. Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla acted under color of state law when they refused to recognize Plaintiff as a disabled person and afford her the protections and accommodations of the ADA.

85. Defendants acted under color of state law when they terminated Plaintiff's employment.

86. Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla acted with the intent and purpose of discriminating against Plaintiff because she was disabled and requested accommodations.

87. Plaintiff incorporates paragraphs 35 through 49, which identifies Defendants Lendis', McCrary's, Bonilla's, Jeantete's and Henson's role in enforcing Defendant Clark County's policy of depriving Plaintiff of her protections under the ADA.

## FIRST CLAIM FOR RELIEF
### (Plaintiff's Cause of Action for Violation of the ADA – Failure to Accommodate Against Clark County)

88. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and based upon information and belief alleges as follows.

13

89.  At all times mentioned in this Complaint, Plaintiff suffered from the following disabilities: (1) agoraphobia, (2) anxiety, and (3) panic disorders.

90.  Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson refused to recognize Plaintiff's (1) agoraphobia, (2) anxiety, and (3) panic disorders as disabilities under the ADA.

91.  Plaintiff made several requests for reasonable accommodations.

92.  Plaintiff's reasonable requests would have allowed Plaintiff to manage her anxiety, reduce her panic attacks, and effectively review and approve permit applications.

93.  These reasonable requests would have resulted in Plaintiff performing at a higher level and reaching and exceeding her job's expectations and perform her position's essential functions.

94.  Defendant Clark County had a duty to provide a reasonable accommodation to the disabled.

95.  Defendants refused to recognize Plaintiff's agoraphobia, anxiety and panic disorders as "disabilities" when they denied Plaintiff any accommodations.

96.   Defendants required Plaintiff to exhaust her FMLA leave instead of granting her reasonable accommodations and then terminated her employment on January 21, 2020.

97.  Because of Plaintiff's disability, Defendants treated Plaintiff in a hostile manner and created a hostile work environment that was severe and pervasive.

98.  Plaintiff was subjected to different terms and conditions of employment because of her disability.

99.  As a direct, foreseeable, and proximate result of Defendants, Clark County's, Lendis's, McCrary's, Bonilla's, Jeantete's and Henson's discriminatory acts and failures to accommodate, Plaintiff suffered and continues to suffer, substantial losses in earnings, job benefits, humiliation, embarrassment, and emotional distress, the precise amount of which will be proven at trial.

14

100. Plaintiff is informed and believes, and thereon alleges, that Lendis, McCrary, Bonilla, Jeantete and Henson committed the acts described herein maliciously, fraudulently, and oppressively, with an improper and evil motive, thus entitling Plaintiff to recover punitive damages from Defendant Clark County in an amount according to proof at trial

101. As a direct and proximate result of Defendants Lendis's, McCrary's, Bonilla's, Jeantete's and Henson's actions, Plaintiff sustained damages which include but are not limited to the following: (1) lost wages; (2) lost benefits; (3) lost pension benefits, (4) lost vacation benefits, (5) emotional distress; (6) mental anguish; and (7) a worsening of Plaintiff's medical condition.

## SECOND CLAIM FOR RELIEF
### (ADA Retaliation against Defendant Clark County)

102. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and based upon information and belief alleges as follows.

103. Plaintiff engaged in an activity protected by the ADA when she informed Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson about her disabilities and requested accommodations.

104. Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson retaliated against Plaintiff because of her disability and for requesting accommodations for her disability.

105. Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson treated Plaintiff in a hostile manner and created a hostile work environment that was severe and pervasive.

106. As a result of exercising her rights under the ADA, Plaintiff was subjected to different terms and conditions of employment because of her disability.

107. Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson refused to recognize Plaintiff as disabled and denied Plaintiff's accommodations.

108. This denial resulted in adverse employment actions as previously described.

15

109. But for Defendants' adverse employment actions, Plaintiff would not have suffered or been subjected to those actions listed in the preceding paragraph.

110. Defendants' ADA violations, discrimination and failure to accommodate denied Plaintiff compensation and forced Plaintiff to miss 36 full weeks of employment and proximately Plaintiff to lose substantial wages.

111. Defendants, Clark County's, Lendis', McCrary's, Bonilla's, Jeantete's and Henson's retaliation inflicted severe emotional distress, mental anguish and other damages upon Plaintiff.

112. Plaintiff's wage loss, pension benefit losses, seniority losses, vacation/sick pay losses, and Plaintiff's emotional and mental distress losses were a direct and proximate result of Defendants, Clark County's, Lendis', McCrary's, Bonilla's, Jeantete's and Henson's ADA retaliation.

113. Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson retaliation against Plaintiff constitute violations of the American with Disabilities Act (ADA).

114. As a direct, foreseeable, and proximate result of Defendants, Clark County's, Lendis's, McCrary's, Bonilla's, Jeantete's and Henson's ADA retaliation, Plaintiff suffered and continues to suffer, substantial losses in earnings, job benefits, humiliation, embarrassment, and emotional distress, the precise amount of which will be proven at trial.

115. As a result of Defendants, Clark County's, Lendis's, McCrary's, Bonilla's, Jeantete's and Henson's ADA retaliation, Plaintiff is entitled to recover attorney's fees and costs.

116. Plaintiff is informed and believes, and thereon alleges, that Defendants Lendis, McCrary, Bonilla, Jeantete and Henson committed the acts described herein maliciously, fraudulently, and oppressively, with an improper and evil motive, thus entitling Plaintiff to recover punitive damages from Defendant Clark County in an amount according to proof at trial

16

117. As a direct and proximate result of Defendants Lendis's, McCrary's, Bonilla's, Jeantete's and Henson's actions, Plaintiff sustained damages which include but are not limited to the following: (1) lost wages; (2) lost benefits; (3) lost pension benefits, (4) emotional distress; (5) mental anguish; and (6) a worsening of Plaintiff's medical condition.

118. As a direct result of Defendants Lendis's, McCrary's, Bonilla's, Jeantete's and Henson's FMLA retaliation and interference, Plaintiff is entitled to lost wages, lost pension benefits, lost vacation and sick pay, and lost wages that would have been earned as a result of being passed up for promotion.

### THIRD CLAIM FOR RELIEF
**(Plaintiff's Cause of Action for Violation of NRS §613.330 Against Defendant Clark County)**

119. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and based upon information and belief alleges as follows.

120. At all times mentioned in this Complaint, Plaintiff suffered from the following disabilities: (1) agoraphobia, (2) anxiety, and (3) panic disorders.

121. Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson refused to recognize Plaintiff's (1) agoraphobia, (2) anxiety, and (3) panic disorders as disabilities under the ADA or NRS §613.330.

122. Defendant Clark County had a duty to provide a reasonable accommodation to the disabled and not treat Plaintiff differently or in a hostile manner because of her disabilities.

123. Plaintiff notified Defendants of her disabilities and also requested reasonable accommodations as previously described.

124. If Plaintiff's reasonable requests had been afforded, Plaintiff could have performed the essential functions required as an Air Quality Specialist without suffering, harm and the need to take Family Medical Leave ("FMLA").

125. Plaintiff's reasonable requests would have allowed Plaintiff to manage her anxiety, reduce her panic attacks, and effectively review and approve permit applications.

126. Plaintiff was subjected to different terms and conditions of employment because of her disability.

127. By refusing to recognize Plaintiff as disabled and denying Plaintiff's accommodations, Plaintiff suffered damages as described supra.

128. Plaintiff's wage loss, pension benefit losses, seniority losses, vacation/sick pay losses, and Plaintiff's emotional and mental distress losses were a direct and proximate result of Defendants' discrimination.

129. Plaintiff is informed and believes, and thereon alleges, that Defendants Lendis, McCrary, Bonilla, Jeantete and Henson committed the acts described herein maliciously, fraudulently, and oppressively, with an improper and evil motive, thus entitling Plaintiff to recover punitive damages from Defendant Clark County in an amount according to proof at trial.

## FOURTH CLAIM FOR RELIEF
### (Plaintiff's Cause of Action for FMLA Interference against Defendant Clark County)

130. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and based upon information and belief alleges as follows.

131. Defendant Clark County was at all times herein employed more than fifty (50) people at Plaintiff's work site and therefore are accordingly subject to the provisions of FMLA. At all times herein mentioned, FMLA was in full force and effect and was binding upon Defendant because it regularly employed more than fifty employees.

132. At all times material hereto, Plaintiff was an employee of Defendant Clark County and was qualified and eligible to receive leave for a serious health condition under FMLA because she worked for more than 1,250 hours in the year prior to her seeking FMLA leave, Plaintiff was employed by Defendant for more than 1 year, and Defendant engages in the business of interstate commerce.

133. Defendants, Clark County, Lendis, McCrary, Bonilla, Jeantete and Henson punished Plaintiff for asking and taking FMLA leave.

18

134. At the time that Plaintiff requested and used FMLA leave, she was eligible for the FMLA's protections.

135. Plaintiff's employer, Defendant Clark County, is an entity covered by FMLA.

136. At the time that Plaintiff requested and used FMLA leave, Plaintiff was entitled to take FMLA leave.

137. Defendants interfered with Plaintiff's FMLA by leaving work in Plaintiff's queue, assigning new work, failing to assign work to other employees and then demanding that the work be done immediately upon return.

138. As a result of exercising Plaintiff's rights under FMLA, Defendants Lendis, McCrary, Bonilla, Jeantete and Henson subjected Plaintiff to the following adverse employment actions: (1) counting absences against Plaintiff for benefits, promotions and discipline; (2) disciplining Plaintiff by writing her up upon return from FMLA leave; (3) writing Plaintiff up for failing to finish all assignments in Plaintiff's queue upon returning; and (4) refusing to allow Plaintiff total freedom from work while on FMLA leave.

139. As a direct and proximate result of Defendants Lendis's, McCrary's, Bonilla's, Jeantete's and Henson's actions, Plaintiff sustained damages which include but are not limited to the following: (1) lost wages; (2) lost benefits; (3) lost pension benefits, (4) emotional distress; (5) mental anguish; and (6) a worsening of Plaintiff's medical condition.

140. Plaintiff is informed and believes, and thereon alleges, that Defendants committed the acts described herein maliciously, fraudulently, and oppressively, with an improper and evil motive, thus entitling Plaintiff to recover punitive damages from Defendants in an amount according to proof at trial.

### FIFTH CLAIM FOR RELIEF
**(Plaintiff's Cause of Action for Intentional Infliction of Emotional Distress Against Defendants Lendis, McCrary, Bonilla, Jeantete and Henson )**

141. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and based upon information and belief alleges as follows.

19

142. Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla deliberately and specifically intended and acted deliberately to punish and injure Plaintiff by refusing to recognize her as a disabled person and provide requested accommodations.

143. Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla refused to recognize Plaintiff as disabled and afford her accommodations with the intention of causing Plaintiff to suffer panic attacks, and anxiety and suffer mental anguish.

144. Defendant Lendis', Defendant McCrary's, Defendant Henson's and Defendant Bonilla's acts of intentionally and deliberately inflicting harm on a disabled person is extreme and outrageous and is utterly intolerable in a civilized society.

145. Defendants Lendis, McCrary, Bonilla, Jeantete and Henson all worked together and played a vital role in harming Plaintiff.

146. Defendants Lendis, McCrary, Bonilla, Jeantete and Henson all worked together and intended to and did inflict severe emotional distress upon Plaintiff.

147. As a direct, foreseeable, and proximate result of Defendants' discriminatory, retaliatory and harmful acts, Plaintiff suffered and continues to suffer, substantial losses in earnings, job benefits, humiliation, embarrassment, and emotional distress, the precise amount of which will be proven at trial.

148. Plaintiff is informed and believes, and thereon alleges, that Defendants committed the acts described herein maliciously, fraudulently, and oppressively, with an improper and evil motive, thus entitling Plaintiff to recover punitive damages from Defendants in an amount according to proof at trial.

## SIXTH CLAIM FOR RELIEF
**(Plaintiff's Cause of Action for Violation of Title 42 U.S.C. § 1983**
**Against Clark County)**

149. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and based upon information and belief alleges as follows.

150. Defendants, acting under color of state law, violated Plaintiff's protected statutory and constitutional rights.

20

151. Plaintiff falls within the protected class of the disabled and Plaintiff has exhausted all of her administrative remedies required by the ADA.

152. Defendant Clark County, Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla are all "persons" pursuant to Section 1983.

153. The Americans With Disabilities Act (ADA) is intended to benefit a class of persons who are disabled.

154. The ADA is a federal statute that creates enforceable rights and Congress has not foreclosed the possibility of Section 1983 remedy for violations of the ADA.

155. Defendant Clark County has a policy that (1) agoraphobia, (2) anxiety, and (3) panic disorders are not "disabilities" afforded protection of the ADA.

156. Defendant Clark County has a custom of punishing and interfering with employees that take medical leave afforded by the Family Medical Leave Act.

157. Defendant Clark County has failed to train its employees with respect to the ADA and FMLA.

158. Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla showed deliberate indifference towards Plaintiff's rights under the ADA and FMLA.

159. On January 21, 2020, Defendants terminated Plaintiff's employment.

160. Defendant Clark County, Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla refused to recognize Plaintiff's agoraphobia, anxiety and panic disorders as disabilities protected by the ADA.

161. Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla acted under color of state law when they refused to recognize Plaintiff as a disabled person and afford her the protections and accommodations of the ADA.

162. Defendants Lendis, McCrary, Bonilla, Jeantete and Henson all worked together and played a vital role in denying Plaintiff the protections of ADA, NRS §613.330, and FMLA.

21

163. Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla acted with the intent and purpose of discriminating against Plaintiff because she was disabled and requested accommodations.

164. As a direct and proximate result, Plaintiff's damages are continuing and shall continue in the future, all to the damage of Plaintiff.

165. Plaintiff is informed and believes, and thereon alleges, that Defendants committed the acts described herein maliciously, fraudulently, and oppressively, with an improper and evil motive, thus entitling Plaintiff to recover treble damages from Defendants in an amount according to proof at trial.

## SEVENTH CLAIM FOR RELIEF
### (Plaintiff's Cause of Action for ADA Discrimination Against Clark County)

166. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and based upon information and belief alleges as follows.

167. Defendant Clark County has a policy that (1) agoraphobia, (2) anxiety, and (3) panic disorders are not "disabilities" afforded protection of the ADA.

168. Defendant Clark County, Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla refused to recognize Plaintiff's agoraphobia, anxiety and panic disorders as disabilities protected by the ADA.

169. Defendants refused to recognize Plaintiff as disabled and refused her accommodations and required her to use FMLA as an alternative.

170. Once Plaintiff exhausted her FMLA leave, Defendants then proceeded to punish Plaintiff and use this as a pretext to terminate her employment.

171. Defendant Lendis, Defendant McCrary, Defendant Henson and Defendant Bonilla acted with the intent and purpose of discriminating against Plaintiff because she was disabled and requested accommodations.

172. As a direct and proximate result of Defendants' actions, Plaintiff sustained damages; the precise amount of which will be proven at trial.

22

173. Plaintiff will also seek an injunction that her disabilities be properly classified and be afforded her requested accommodations, reinstatement of her employment, attorney fees and costs associated with bringing this action.

## EIGHTH CLAIM FOR RELIEF
### (Plaintiff's Cause of Action for ADA Retaliation against Clark County)

174. Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein and based upon information and belief alleges as follows.

175. Defendant Clark County failed to recognize Plaintiff as disabled.

176. Defendants retaliated against Plaintiff for seeking ADA accommodations, and bringing an action in court, by terminating her employment.

177. Plaintiff is informed and believes, and thereon alleges, that Defendants committed the acts described herein maliciously, fraudulently, and oppressively, with an improper and evil motive, thus entitling Plaintiff to recover punitive damages from Defendants in an amount according to proof at trial.

178. Plaintiff will also seek an injunction that her disabilities be properly classified and be afforded her requested accommodations, reinstatement of her employment, attorney fees and costs associated with bringing this action.

179. As a direct and proximate result, Plaintiff sustained damages, some damages are continuing and shall continue in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, expressly reserving the right to amend this Complaint prior to or at the time of trial of this action to insert those items of damage not yet fully ascertainable, prays judgment against the Defendants, and each of them, as follows:

1. General damages in an amount in excess of $75,000.00;

2. Special damages to be determined at the time of trial;

3. Any and all Statutory remedies;

23

4.    Punitive damages;

5.    Treble damages;

6.    Medical and incidental expenses already incurred and to be incurred;

7.    Lost earnings and earning capacity;

8.    Reasonable attorney's fees and costs of suit;

9.    Injunctive relief;

10.   Declaratory relief;

11.   Interest at the statutory rate; and,

12.   For such other relief as this Court deems just and proper.

DATED THIS 23rd day of October, 2020.

RICHARD HARRIS LAW FIRM

*Burke Huber*

_____
BURKE HUBER, ESQ.
Nevada Bar No. 10902
801 South Fourth Street
Las Vegas, Nevada 89101
*Attorney for Plaintiff*

24

Exhibit A

CONFIDENTIAL

## MEDICAL CERTIFICATION BY LICENSED HEALTH CARE PROVIDER
### (For ADA Accommodation Assessment)

Dear Health Care Provider, our employee, your patient, has applied for a workplace accommodation pursuant to the Americans with Disabilities Act of 1990 (ADAAA). This individual asserts a physical and/or mental impairment that supports his/her request for an accommodation (an accommodation that may allow the individual to perform the essential functions of his/her job). *This is not a requirement for the individual to obtain a medical examination.* However, as part of the ADA assessment process, some medical information is needed. Respond only to the physical (and/or mental) impairment that may impact the individual's ability to perform his/her job duties. We have provided a copy of the individual's job/position description for your review as part of your assessment. Please return the completed and signed medical certification to the County's Office of Diversity by 5:00 p.m. on SEPTEMBER 28, 2017. If you have any questions in regard to this matter, please contact our office at (702) 455-5760 or fax at (702) 455-5759. Thank you for your cooperation and assistance.

Patient's Name: _____Go, Elaine Aubrey_____  Patient's Phone No.: ███████████

Patient's Signature: _____Elaine Go_____  Date: _9/22/17_

(NOTE: If you answer "NO" to questions 1, 2 AND 3, please skip the remainder of this form and complete the Health Care Provider information on page 2):

Other: _____

*CONFIDENTIAL*

MEDICAL CERTIFICATION BY LICENSED HEALTH CARE PROVIDER (For ADA Accommodation Assessment)



Electronically signed by Nancy M. Hsiao, M.D.
printed on 09/22/2017 at 12:38



# **Office of Diversity**

Sandy Jeantete, Director

September 14, 2017

RE:     Elaine Go

Dear Physician:

Elaine Go, a patient of yours, is seeking a work related accommodation under the Americans with Disabilities Act of 1990 (ADA).  In order to evaluate the accommodation request, our office will need to receive from you specific medical information with regard to this individual. You will need to provide a medical diagnosis of the individual's physical or mental impairment.

In addition to the diagnosis, we will need you to review the Air Quality Specialist II job duties. Please provide your medical opinion as to Elaine Go's ability to perform these job duties in light of the medical condition. If in your opinion Elaine Go cannot perform these duties with or without an accommodation, please advise. If, however, you believe Elaine Go can perform the job duties with a reasonable accommodation, please specifically state what modifications and/or adjustments may be necessary for this employee to continue to perform the essential functions of the job assignment. We would appreciate receiving the requested information from you by 5:00 p.m. on **September 28, 2017.**

Thank you for your prompt response to our request for information. If you have any questions, please contact me at **(702) 455-5760.**

Sincerely,

Sandy Jeantete
Director

By: _____
     Kathy Rodriguez
     HR Technician

SJ/kr

Enclosures (Medical Certification Form; Job Description)



# Office of Diversity

████████████████████████████████

Sandy Jeantete, Human Resources Director

September 14, 2017

Elaine Go
6255 West Arby Avenue Unit 208
Las Vegas, NV 89118

**RE:  ADA ACCOMMODATION REQUEST**

Dear Ms. Go:

You have requested a workplace accommodation pursuant to the Americans with Disabilities Act of 1990 (ADA).  In order to be eligible for consideration of an accommodation, you must have a physical or mental impairment that substantially limits a major life activity.  To assist in the assessment as to your eligibility for an accommodation, medical information is required.

Enclosed is a copy of the medical certification form you are to give your treating healthcare professional as authorization to provide the required medical information.  Please ask your healthcare provider to complete and sign the medical certification form and return it by **September 28, 2017** to the Office of Diversity (OOD) via mail or fax.   Upon receipt of this information, the OOD will process your request.

An analyst will contact you to further discuss your eligibility for an accommodation and/or your accommodation needs.  Your cooperation in this inter-active process is anticipated.

Please contact us at 455-5760 if you have any questions in regard to this matter.

Sincerely,

Sandy Jeantete
Director

By: _____
Kathy Rodriguez, HR Technician

Enclosures (3)

Exhibit B



**CERTIFICATE FOR RETURN TO SCHOOL OR WORK**







Exhibit C

 Gmail

**Elaine Go <goelainea@gmail.com>**

## Elaine Go, Second Accommodation Request

███████████████    ████    ██████

Ms. Bonilla,

I am writing to share my concerns about the accommodation process through the Office of Diversity.

My physician recently submitted a second request on my behalf after the first was denied. In the letter denying my first accommodation request, OOD claims that I am able to do my job and therefore my request is not covered by the ADA. This is an incredibly selective reading of the situation.

While I am at work, I am able to do my job. However, due to my condition, I am rarely at work. I only go into work when I am feeling well enough to complete my job duties. The stressors I mentioned in my interview with Ms. Pozniak trigger anxiety attacks and I am forced to take time off to recuperate. This is clearly not sustainable. Since September 18th, I have been at work for less than 40 hours total. This should give some indication of how severely my disability impacts my work.

When I first came to see Ms. Pozniak, I noted I was on FMLA leave for the disability I was seeking accommodations for. My FMLA leave is now almost fully depleted and I have been unable to accrue any significant sick or vacation time for at least six months due to my condition.

My doctor indicated a need for accommodation in her initial letter. OOD chose to ignore this, instead relying on statements made during the in-person interview, where Ms. Pozniak witnessed me having a panic attack and I expressed difficulty communicating. While the meeting was recorded, OOD has not been willing to share this recording with me, so I am unable to further corroborate exactly what was said.

The denial letter states that OOD believes my desire for accommodation is based on a workplace dispute or dissatisfaction with my supervisor. I have attached my most recent performance review so you can see that I am not attempting to blame poor performance on my disability. Instead I am trying to ensure future performance at the expected level for an employee in my position.

Furthermore, during a phone conversation, Ms. Pozniak indicated that she did not coordinate with Shawn McCrary or any other DAQ or HR staff during the evaluation period. When I asked about the status of my request after two weeks, Ms. Pozniak had yet to meet with you to finalize the decision. It troubles me that it took over two weeks to have a meeting with a supervisor and move my request forward -- especially when the ultimate decision was to deny my request.

In short, I am concerned with the lack of coordination with DAQ, a decision that seems to ignore the evidence and documentation provided, and the decision's untimeliness -- especially given the minimal effort OOD used to evaluate my situation.

From my perspective, OOD's past actions show an irresponsible lack of care and consideration. To prevent further harm, please do not allow this to happen again. My second request has been received by Ms. Pozniak and I hope that you will do everything in your power to expedite it, as I have depleted all available leave balances while trying to resolve this situation. Any further delay is almost certain to result in my discipline or termination due to the use of unprotected Leave Without Pay.

If you have additional questions, please ask and I will answer to the best of my ability. If any of my physician's proposed accommodations are unacceptable, I ask that OOD propose alternatives so we can have a truly interactive process in good faith and finally resolve this issue. Thank you.

Elaine Go

---

📄 **20170715 Go Elaine Annual Evaluation.pdf**
209K

Exhibit D



See correspondence below. We'll let you know of any response.

---------- Forwarded message ----------

Dear Letty:

This email is to serve as an additional request for reasonable accommodations for Ms. Elaine Go.

Ms. Go began working at the Department of Air Quality as an AQ Specialist II in 2013. Beginning in 2017, Ms. Go's generalized anxiety disorder began exasperating. From March of 2017, Ms. Go has continuously requested accommodations, conversations, and leave. Ms. Go also began the interactive process as required by the ADA. As a result of a failure to accommodate, Ms. Go was forced to exhaust her FMLA and Leave Without Pay.

When we spoke last week, you informed us that the County has determined that Ms. Go is not a qualified individual with a disability. As previously explained, Ms. Go is unable to return to work without any accommodation. At this point, Ms. Go exhausted her leave without pay and the county is refusing to provide additional leave. As of now, the County has gone "outside the process," beginning next week. Ms. Go has not been able to return back to work at this point, and has been told that she is on a progressive discipline policy, where she will be terminated after five absences.

First, we do not believe that the County engaged in an ADA-required interactive process, in good faith, thus far. The burden of determining whether an employee is a qualified individual should not be burdensome. The ADA states that, "'substantially limits'" shall be construed broadly in favor of expansive coverage" and that, "'substantially limits' is not meant to be a demanding standard." Ms. Go met with the Office of Diversity in person and explained her disability. Then, Ms. Go provided medical documentation, which stated that she was substantially limited in performing major life activities. Finally, Ms. Go and OOD had phone conference with us, her counsel. In this meeting, we adequately stated that Ms. Go's disability substantially limits various major life activities. We were informed a few days later that the County determined she is not a qualified individual with a disability and that the interactive process was over. We asked the County what additional documentation or information it needed to reconsider and continue the process. The County stated that there was nothing else, and that there would be no change in its determination. Thus, the County stopped the interactive process without further exploring or determining how best to help Ms. Go.

Second, we would like to reiterate that Ms. Go is a qualified individual with a disability under the ADA. As explained, Ms. Go's disability substantially limits her ability to sleep, speak, breath, concentrate, and work. These are all major life activities under the ADA. You stated that her disability does not substantially limit her more than the average person because everyone has trouble sleeping and concentrating at times. However, the ADA states that a disability is substantially limiting when an employee is significantly restricted under which she can perform a particular major life activity, as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. The ADA specifically states that an impairment does not need to prevent or severely restrict an individual from performing a major life activity in order to be considered substantially limiting.

Thus, we are asking you one more time to reconsider Ms. Go's reasonable accommodation request. Further, please grant her extended leave. Finally, please do not terminate her. Please let me know if there is any additional documentation or information we can provide. We would like to get this issue resolved as soon as possible, so Ms. Go may return back to work.

Thank you very much and Happy New Years.

Sincerely,



Elizabeth Aronson, Esq.
GABROY LAW OFFICES
The District at Green Valley Ranch
170 S. Green Valley Pkwy. Ste. 280 | Henderson, NV 89012
Office: (702) 259-7777 | Facsimile: (702) 259-7704

STATEMENT OF CONFIDENTIALITY: The information contained in this transmission, including any attached documentation is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify Gabroy Law Offices immediately by replying to this email. Please delete all copies of this message and any attachments immediately.

--

Elizabeth Aronson, Esq.
GABROY LAW OFFICES
The District at Green Valley Ranch
170 S. Green Valley Pkwy. Ste. 280 | Henderson, NV 89012



Office: (702) 259-7777  |  Facsimile: (702) 259-7704

**STATEMENT OF CONFIDENTIALITY:** The information contained in this transmission, including any attached documentation is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify Gabroy Law Offices immediately by replying to this email. Please delete all copies of this message and any attachments immediately.

Exhibit E

 

Ms. Bonilla,

I am writing on behalf of Elaine Go, an Air Quality Specialist II at the Clark County Department of Air Quality. Elaine is my spouse.

Attached you will find two documents:

1. A medical Power of Attorney, wherein Elaine grants permission for me to conduct health-related business in her name, and
2. An email from Ted Lendis, Elaine's direct supervisor, advising her that she may wish to apply for accommodations.

As you may recall, Elaine applied for accommodations twice before (September 2017 and November 2017) and was denied both times. The first time, you stated she was having a conflict with her supervisor. The second time, you stated she was "not disabled" despite documentation from Elaine's physician and explanation from Elaine's attorney.

Elaine recently returned from Catastrophic Leave after a meeting induced a panic attack that rendered Elaine bedridden for three weeks (September 25 to October 19, 2018). Elaine's supervisor, with whom she supposedly had a conflict, recognizes Elaine's disability and the need for accommodations.

I want to schedule a meeting wherein I can discuss Elaine's health condition with the Office of Diversity and discuss possible accommodations. I fear that, without accommodations, Elaine will not be able to continue her employment with Clark County in her current position.

Please let me know your availability and I will get back to you as soon as I can. This matter is urgent.

Thank you,
Bill Livolsi

   

elaine health
poa.pdf

RE_ Injury
Report.pdf

Exhibit F



Ms. Bonilla,

As we discussed when I met with you on November 13, 2018, OOD believes that Elaine does not have a disability because, despite having a medical condition that substantially limits one or more major life activities, you feel that the condition is "caused" by the situation at work, specifically Elaine's supervisor. At the time, I stated that Elaine's condition is caused by the underlying medical problem, while the situation at work only serves to trigger it.

My most recent email of January 17, 2019 demonstrates this conclusively. Elaine was assigned to a different supervisor on January 3, 2019. This supervisor has no history of conflict with Elaine and by all accounts they get along well. However, Elaine's panic attacks have persisted. This shows that the Office of Diversity's assessment is incorrect — even when removed from the person "causing" the condition, Elaine's condition has persisted. **This should constitute new or updated medical information and should therefore cause the Office of Diversity to re-assess Elaine's qualification under the Americans with Disabilities Act.**

Elaine has stated several times that she would be more than capable of performing her job from home on certain days when her condition flares up. Because of OOD's decision, this option is not available, and Elaine is forced to use FMLA instead. This results in lost work time, depletion of Elaine's FMLA balance, and lost pay. An accommodation would be beneficial not only to Elaine, but also to DAQ. However, OOD is unwilling to discuss potential accommodations, because you maintain that Elaine is not disabled.

Elaine has nearly depleted her FMLA for the year. She currently has 34 hours remaining in her allotment, at which point she will not be entitled to any additional leave until September 2019. DAQ management have stated several times that any requests for Leave Without Pay (LWOP) will be denied. Elaine has already used Catastrophic Leave this year, and even if this option were available, DAQ management is still allowed to deny the underlying LWOP request. Elaine is likely to face discipline or termination if accommodations are not granted.

In December 2017, DAQ Director Marci Henson stated that her decision to deny Elaine's LWOP requests is directly linked to OOD's assessment that Elaine is not disabled. Therefore, OOD's decision has not only denied Elaine the accommodations she is entitled to, but also altered the perception of DAQ management and caused significant harm to Elaine.

I ask that you consider my email of January 17, 2019 as updated medical information. Elaine has already provided two medical certifications from her physician. She does not have the resources to obtain a third — she has very little FMLA leave remaining, has not accrued sufficient PTO to see her physician, and cannot afford to pay for updated ADA paperwork due to missing 3 months of pay while on FMLA leave. Obtaining another signed ADA packet would constitute a hardship.

You previously stated that we are welcome to appeal your decision to the Nevada Equal Rights Commission. With respect, this is not a realistic option for Elaine or other County employees who are struggling to keep their jobs. Elaine appealed to NERC in October 2017, and NERC was unable to assign an investigator until October 2018. That investigation is still ongoing. By asking employees who are already struggling to wait more than a year for a second opinion, you are doing irreparable harm and causing a hardship for employees who assert their rights under the Americans with Disabilities Act.

Please consider the information above and get back to me as soon as possible. If you do not feel you are able to evaluate Elaine's information impartially, I encourage you to assign the case to other personnel.

Thank you,
Bill Livolsi
on behalf of Elaine Go

On Jan 25, 2019, at 6:14 PM, Letty Bonilla ███████████████████████

███████████████████████████████████████████████████████████████████████ has any new or updated medical information, please submit directly to me and/or Office of Diversity (OOD) for evaluation. As previously communicated to you, OOD's assessment of Elaine Go's request for accommodation and OOD's determination was made in part based on the medical information that we currently have on file up to this point. Therefore, if there is no new or updated medical information for evaluation, I encourage you to please continue to work with Risk Management in regard to FMLA and/or other leave options that may be available and/or Elaine's department administration as may be necessary.

As always, if you have any questions or wish to speak to me, feel free to give me a call.



Ms. Bonilla,

I am writing on behalf of my wife, Elaine Go, an employee of the Clark County Department of Air Quality. You previously decided that Elaine's medical condition did not qualify as a disability due to its connection to her supervisor.

Elaine has been assigned a new supervisor since the beginning of this year. The panic attacks have persisted. Elaine has now nearly depleted her FMLA allowance for the year and has been using her sick and vacation leave as quickly as it is accrued. If this continues, she will not be able to attend necessary treatment appointments due to lack of available leave.

I ask, again, that you revisit your decision to deny Elaine the disability accommodations she has sought since September 2017.

Regards,
Bill Livolsi

Exhibit G

 

gov

**Cc:** Elaine Go goelainea@gmail.com

---

Ms. Bonilla,

Do you still plan to have an answer for us today, as per your email of June 4?

Thanks,
Bill Livolsi

On Jun 4, 2019, at 5:11 PM, Letty Bonilla <BonillaL@ClarkCountyNV.gov> wrote:

Hi Bill, I appreciate your continued patience in this matter.  I did receive your emails mentioned below requesting for status update....my apologies for not having responded.  It has taken me longer than I expected to get back to you but I want to make sure that I thoroughly review all of the information you provided on April 23, 2019 (including information on file).  At this point Bill, I'm asking that you please allow me till the end of next week to get back to you with an answer as to this matter (*my goal will be sooner nonetheless*).

Thank your understanding.  If you would like to discuss, please feel free to contact me.

*Letty Bonilla*



---

 Accommodations - Elaine Go

Ms. Bonilla,

It has now been six full weeks since our meeting. I have not received any update from you on the status of Elaine Go's disability accommodations.

I previously emailed you on May 24th and May 13th to ask for updates, but did not receive responses.

Can you please give me an update on the Office of Diversity's progress so far?

Sincerely,
Bill Livolsi

On Apr 23, 2019, at 10:10 AM, Letty Bonilla <BonillaL@ClarkCountyNV.gov> wrote:

I will see you at 3pm Bill.  Thank you.

**F** █████████████████████████████████
**S**
**T**
**S**

Ms. Bonilla,

OK, I will see you at 3PM. As I previously stated several times, Elaine has no leave available. I will be meeting with you on Elaine's behalf and holding her Power of Attorney. Elaine will not be present.

Thank you,
Bill Livolsi

On Apr 23, 2019, at 9:32 AM, Letty Bonilla <████████████████████ wrote:

Hello Bill, I can meet with you and Ms. Go today 3pm.  Thank you.

 *iversity*

**From:** Bill Livolsi [mailto:wlivolsi@gmail.com]
**Sent:** Monday, April 22, 2019 12:50 PM
**To:** Letty Bonilla
**Subject:** Re: Disability Accommodations - Elaine Go

In that case, Tuesday afternoon will work.

On Apr 19, 2019, at 4:49 PM, Letty Bonilla <BonillaL@ClarkCountyNV.gov> wrote:

I have a 10am already scheduled.

**From:** Bill Livolsi [mailto:wlivolsi@gmail.com]
**Sent:** Friday, April 19, 2019 4:46 PM
**To:** Letty Bonilla

**Cc:** Elaine Go; Elaine Go
**Subject:** Re: Disability Accommodations - Elaine Go

I would prefer something in the morning- say 10am? Let me know. Thanks.

On Apr 19, 2019, at 4:37 PM, Letty Bonilla ███████████████> wrote:

> Bill, I've been in and out of the office and I'm scheduled off on Monday and have meetings on Tuesday but I can make myself available Tuesday afternoon.  Will Tuesday afternoon work?



███████████Thank you.

On Apr 19, 2019, at 4:34 PM, Letty Bonilla <BonillaL@ClarkCountyNV.gov> wrote:

Hi Bill, can we meet next Wednesday, April 24th in the afternoon at 3pm? Let me know if this works so that I can put it on my calendar.  Thank you.

*Letty Bonilla*



Hi Letty,

I am available to meet at your earliest convenience, including later today and all day tomorrow. Please let me know your earliest availability.

Thank you

Thank you,
Bill Livolsi

On Apr 15, 2019, at 8:37 AM, Letty Bonilla
<BonillaL@ClarkCountyNV.gov> wrote:

> Hi Bill, as stated in my email to you dated February 19, 2019, we can
> schedule a meeting to discuss the new information you shared with
> me regarding *"....even when removed from the person 'causing' the
> condition, Elaine's condition has persisted".*   Please let me know
> when will be a good date/time.
>
> Thank you.





> Ms. Bonilla,
>
> Please at least confirm receipt of the email below.
>
> Thank you,
> Bill Livolsi

On Apr 9, 2019, at 8:16 PM, Bill Livolsi <wlivolsi@gmail.com>
wrote:

Ms. Bonilla,

This afternoon I spoke to Darrell Harris, Supervisory Compliance

Inspector at the Nevada Equal Rights Commission, about Elaine Go and her accommodation request.

According to Mr. Harris, NERC's position is that, based upon the evidence presented, <u>Elaine Go is a qualified individual with a disability under the definition provided in the Americans with Disabilities Act.</u>

Please note that NERC received the exact same medical certification that we provided to the Office of Diversity in November 2017.

Elaine Go is therefore eligible for disability accommodations using the November 2017 medical information we provided to OOD.

NERC further states that moving Elaine's cubicle away from her supervisor constituted an accommodation, as did the granting of FMLA leave.

Elaine wishes to inform the Office of Diversity that the provided accommodations are insufficient. She again asks the Office of Diversity to continue the interactive process by evaluating the other accommodations she requested in November 2017.

We ask that you immediately inform the Department of Air Quality that OOD's previous determination was incorrect. We also ask that you immediately reopen Elaine Go's accommodation request so additional accommodations can be provided.

Please let me know exactly how you wish to proceed. If you need time to consider your response, please respond immediately to confirm receipt of this email and provide a timeline for a full response.

Sincerely,
Bill Livolsi
on behalf of Elaine Go

On Apr 3, 2019, at 12:10 PM, Bill Livolsi
███████████████████

Ms. Bonilla,

I never received a response to this. Why does OOD require updated medical information from Elaine?

Thanks,
Bill Livolsi

On Feb 25, 2019, at 11:27 AM, Bill Livolsi
██████████████wrote:

> Ms. Bonilla,
>
> I understand. However, my question was: *why* does OOD need updated medicals?
>
> Thanks,
> Bill Livolsi

On Feb 21, 2019, at 9:02 AM, Letty Bonilla
███████████████████ > wrote:

Hello Bill, as previously stated, we can schedule a meeting to discuss the new information you reference in your email below. But, please keep in mind that in light of the new information, we will need updated medicals in order to complete a reassessment of Ms. Go's Request for accommodation.

Let me know if you want to proceed with the meeting.

Thank you.

*Letty Bonilla*
████████████████
██████████

Ms. Bonilla,

In what way is Elaine's last medical certification lacking? I have attached a copy for your reference.

Please respond as soon as possible.

Thank you,
Bill Livolsi
on behalf of Elaine Go

On Feb 19, 2019, at 9:43 AM, Letty Bonilla

wrote:

Hello Bill, hope that you are doing well. In light of your statements below "…*even when removed from the person "causing" the condition, Elaine's condition has persisted"* **and** wherein you further state *that this should constitute new or updated medical information*, I would like to meet with you and Ms. Go to discuss this but please understand that our Office will need updated medicals in order to complete a re-assessment of Ms. Go's request for an accommodation. Please let me know when it is a good date/time to meet to discuss the new information you present below.

Thank you.

*Letty Bonilla*
*Manager, Office of Diversity*
*Clark County*

*(702) 455-4667*

Letty,

Please let me know if you will be re-evaluating Elaine's claim in light of the clarifications I made in my last email. Thank you.

Regards,
Bill Livolsi
on behalf of Elaine Go

On Jan 28, 2019, at 9:54 AM,

Ms. Bonilla,

As we discussed when I met with you on November 13, 2018, OOD believes that Elaine does not have a disability because, despite having a medical condition that substantially limits one or more major life activities, you feel that the condition is "caused" by the situation at work, specifically Elaine's supervisor. At the time, I stated that Elaine's condition is caused by the underlying medical problem, while the situation at work only serves to trigger it.

My most recent email of January 17, 2019 demonstrates this conclusively. Elaine was assigned to a different supervisor on January 3, 2019. This supervisor has no history of conflict with Elaine and by all accounts they get along well. However, Elaine's panic attacks have persisted. This shows that the Office of Diversity's assessment is incorrect — even when removed from the person "causing" the condition, Elaine's condition has persisted. **This should constitute new or updated medical information and should therefore cause the Office of Diversity to re-assess Elaine's qualification under the Americans with Disabilities Act.**

Elaine has stated several times that she would be more than capable of performing her job from home on certain days when her condition flares up. Because of OOD's decision, this option is not available, and Elaine is forced to use FMLA instead. This results in lost work time, depletion of Elaine's FMLA balance, and lost pay. An accommodation would be beneficial not only to Elaine, but also to DAQ. However, OOD is unwilling to discuss potential accommodations, because you maintain that Elaine is not disabled.

Elaine has nearly depleted her FMLA for the year. She currently has 34 hours remaining in her allotment, at which point she will not be entitled to any additional leave until September 2019. DAQ management have stated several times that any requests for Leave Without Pay (LWOP) will be denied. Elaine has already used Catastrophic Leave this year, and even if this option were available, DAQ management is still allowed to deny the underlying LWOP request. Elaine is likely to face discipline or termination if accommodations are not granted.

In December 2017, DAQ Director Marci Henson stated that her decision to deny Elaine's LWOP requests is directly linked to OOD's assessment that Elaine is not disabled. Therefore, OOD's decision has not only denied Elaine the accommodations she is entitled to, but also altered the perception of DAQ management and caused significant harm to Elaine.

I ask that you consider my email of January 17, 2019 as updated medical information. Elaine has already provided two medical certifications from her physician. She does not have the resources to obtain a third — she has very little FMLA leave remaining, has not accrued sufficient PTO to see her physician, and cannot afford to pay for updated ADA paperwork due to missing 3 months of pay while on FMLA leave. Obtaining another signed ADA packet would constitute a hardship.

You previously stated that we are welcome to appeal your decision to the Nevada Equal Rights

Commission. With respect, this is not a realistic option for Elaine or other County employees who are struggling to keep their jobs. Elaine appealed to NERC in October 2017, and NERC was unable to assign an investigator until October 2018. That investigation is still ongoing. By asking employees who are already struggling to wait more than a year for a second opinion, you are doing irreparable harm and causing a hardship for employees who assert their rights under the Americans with Disabilities Act.

Please consider the information above and get back to me as soon as possible. If you do not feel you are able to evaluate Elaine's information impartially, I encourage you to assign the case to other personnel.

Thank you,
Bill Livolsi
on behalf of Elaine Go

On Jan 25, 2019, at 6:14 PM, Letty Bonilla
███████████████████████ > wrote:

Hello Bill, I apologize for my delayed response to your email communication below. Please know that if Elaine has any new or updated medical information, please submit directly to me and/or Office of Diversity (OOD) for evaluation. As previously communicated to you, OOD's assessment of Elaine Go's request for accommodation and OOD's determination was made in part based on the medical information that we currently have on file up to this point. Therefore, if there is no new or updated medical information for evaluation, I encourage you to please continue to work with Risk Management in regard to FMLA and/or other leave options that may be available and/or Elaine's department administration as may be necessary.

As always, if you have any questions or wish to speak to me, feel free to give me a call.

Thank you.

Letty Bonilla

 Diversity

-----Original Message-----

Ms. Bonilla,

I am writing on behalf of my wife, Elaine Go, an employee of the Clark County Department of Air Quality. You previously decided that Elaine's medical condition did not qualify as a disability due to its connection to her supervisor.

Elaine has been assigned a new supervisor since the beginning of this year. The panic attacks have persisted. Elaine has now nearly depleted her FMLA allowance for the year and has been using her sick and vacation leave as quickly as it is accrued. If this continues, she will not be able to attend necessary treatment appointments due to lack of available leave.

I ask, again, that you revisit your decision to deny Elaine the disability accommodations she has sought since September 2017.

Regards,
Bill Livolsi

<20171108 return-work-ada.pdf>

Exhibit H

# Office of Diversity

████████████████████████████████ as NV   89155-1113

Sandy Jeantete, Director

October 23, 2017

████████████████████████

███████████████████

Dear Ms. Go:

You came to the Office of Diversity (OOD) for an assessment as to your eligibility for a workplace accommodation pursuant to the Americans With Disabilities Act as amended (ADAAA). Accordingly, on September 29, 2017, you participated in an interactive meeting with the OOD analyst as part of the ADA process. During the interactive process you stated, in part, that you can perform your job duties/assignments, but expressed concern about case assignments that you stated were beyond your job qualifications, and you further expressed concerns/disapproval of your supervisor asking for status updates. You sought to be excused from certain work assignments, and to be moved away from your supervisor. The issues you raised are matters that are addressed outside of the ADA process. Please work with your Department's administration, your Union, and/or Labor Relations to address your concerns. Our office will take no action in this matter and will administratively close this file.

If, in the future, you are in need of a workplace accommodation, please call the Office of Diversity at (702) 455-5760.

Sincerely,

Sandy Jeantete
Director, Human Resources

SJ/kp

Exhibit I

Hi Bill and Elaine,

Just to summarize our conversation we had on the phone and update in your matter.  We have been working very hard.

As of now, the County appears not willing to continue the interactive process because it does not believe that Elaine is qualified individual with a disability under the ADA, amongst other arguments the County has advised. However, it has decided to speak to Elaine's supervisor and move her desk, "outside of the process."

As such, the failure to return to work  will most likely result in the County terminating Elaine. It is imperative and we believe that if Elaine can return to work she should return to work by tomorrow.

If she can not medically return to work, make sure that you send, in writing and according to the normal procedure, a request for extension of time off work, continue to file disability benefits, etc.

I know you are out of LWOP and FMLA and we do not want you to lose your job.

Let me know if you have any additional questions. Speak soon and reach out to us if you need anything.

Best,

Liza

--

Elizabeth Aronson, Esq.
GABROY LAW OFFICES
The District at Green Valley Ranch
170 S. Green Valley Pkwy. Ste. 280 | Henderson, NV 89012
Office: (702) 259-7777 | Facsimile: (702) 259-7704

STATEMENT OF CONFIDENTIALITY: The information contained in this transmission, including any attached documentation is privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify Gabroy Law Offices immediately by replying to this email. Please delete all copies of this message and any attachments immediately.

Exhibit J



# Office of Diversity

9155-1113

Sandy Jeantete, Director

December 21, 2017

Dear Ms. Go:

The Office of Diversity has completed its assessment of your request for an ADA accommodation. In order to be eligible for a workplace accommodation pursuant to the Americans With Disabilities Act as amended (ADAAA), an individual must have a physical or mental impairment that substantially limits a major life activity.

Based upon the information gathered during the course of this assessment, including information obtained through the interactive process, it is determined that you are not an individual with a disability within the meaning of ADA as you do not have an impairment that substantially limits a major life activity.

Accordingly, we referred this matter to your department. As communicated to you through your attorneys on December 20, 2017, your department's administration approved your request, for a cubicle reassignment on a temporary, 6 month basis effective first week of January, 2018. Please work with your administration accordingly.

If you have any questions, please do not hesitate to contact the assigned analyst, Karina Pozniak at 455-4030.

Sincerely,

Sandy Jeantete

SJ/kp

Chair
· Lawrence Weekly

Yolanda King, County Manager

Exhibit K



██████████████████████████
████████████████████████

**To:** Bill Livolsi  wlivolsi@gmail.com

Sent from my iPhone

Begin forwarded message:

F██████████████████████████████
█████████████████████████
██████████████████████████
██████████████████████████████gov>, Ted Lendis <Lendis@ClarkCountyNV.gov>

**Subject: Re: LWOP Request**

Elaine,
The interactive process is complete and you were determined not to be disabled per the standard required in the law and therefore no accommodations will be provided. As a courtesy and outside the ADA process, the department has agreed to relocate your cubicle for a six month trial. The move will take place the first week in January.

My understanding is that this has all been explained to your representatives by the OOD as has the need for you to return to work.

As I wrote yesterday, if you choose not to come to work today, you will receive an unscheduled LWOP and will be subject to the progressive discipline process.

On a final note, other than moving your cubicle location, the Department expects for you to return to work and for business to go on as usual. As such, the Department expects to hear from & communicate with you directly and not through Bill or other representatives. You also need to follow the time attendance policy and inform your supervisor and manager (which is me for the time being) when calling in. It's not necessary to include anyone else in these notices going forward. With all due respect, please stop having Bill communicate with the Department. You are our employee and not Bill.

Thank you,
Marci

Sent from my iPhone

On Dec 22, 2017, at 7:18 AM, Bill Livolsi <wlivolsi@gmail.com> wrote:

Ms. Henson,

Elaine Go cannot come to work today, Friday, December 22nd, 2017.

I again ask that you extend Elaine's Leave Without Pay so that she may complete the interactive process with Clark County in good faith and without fear of termination.

Sincerely,
Bill Livolsi

███████████████████
████████████████████████████
██████████████████████
████████████████████

On Dec 21, 2017, at 7:10 AM, Marci Henson ████████████████████████

Hi Bill,
Elaine will not be granted further LWOP and is expected to return to work this morning at 8:00 am.

If she chooses not to return to work today at 8 am she'll be on unscheduled LWOP and this will start her on the progressive discipline track for time & attendance.

Thank you,
Marci

Sent from my iPhone

On Dec 21, 2017, at 7:04 AM, Bill Livolsi < █████████████████ >

Ms. Henson,

Thank you for your reply. You have indicated that Elaine Go's request for further Leave Without Pay during the interactive process is denied, and that she must return to work today, Thursday, December 21st at 8:00 AM.

On the advice of her doctor, **Elaine Go cannot return to work until accommodations are in place**. Returning to work without accommodations would put her health at risk. She will therefore not be reporting to work today.

I again ask that you extend Elaine's Leave Without Pay so that she may complete the interactive process with Clark County in good faith and without fear of termination.

Sincerely,
Bill Livolsi

Employee name: Elaine Go

Length of time employee expects to be away from work: 8 hours

Type of leave requested: sick / LWOP

Time emailed: December 21st 7:03 am

Return phone ████████████████

On Dec 20, 2017, at 12:59 PM, Marci Henson < ████████████████████ wrote:

Bill,
I'm not approving any additional LWOP.  Elaine needs to report to work tomorrow at 8:00 am.  OOD has reached out to the Department and they will be in touch with Elaine on the outcome of that discussion.



Ms. Henson,

I just left you a voicemail, but I'm sending as an email as well.

Yesterday, Ms Bonilla of OOD spoke to Elaine's attorney and said that a final determination had not yet been made. She stated that she was going to speak to members of Air Quality and get back to us by Friday. Again, I don't know if this means she will make a final determination or request more information.

In short, we are still engaged in the interactive process and are requesting a further extension of Elaine's LWOP.

If you have any questions, please feel free to write or call. My number is 702-207-9683.

Thanks,
Bill Livolsi



Hi Bill,
Thank you for the information.  I will approve Elaine for another 24 hours of LWOP starting on Monday 12/18 at 8:00am through Wednesday 12/20th 5pm.  Let's re-evaluate where we're at with the OOD request around noon on Wednesday 12/20/17.  I will append this email to my prior approval.

Thank you,
Marci Henson
Director
Department of Air Quality
4701 W. Russell Rd, Suite 200
Las Vegas, NV 89118
702.455.3118
mhenson@clarkcountynv.gov

mail.com>

**Subject:** Re: LWOP Request

Ms. Henson,

I gave you a call a few minutes ago, but thought I should email you as

well.

Elaine had a meeting with Office of Diversity on Tuesday. They said it would take until at least the end of this week before we heard back from them.

I called Letty Bonilla of OOD yesterday to see how it was going, and she said we would likely hear back before Wednesday of next week. I still don't know if that means she will make a determination or just request more info.

So in other words, Elaine is still participating in the interactive process and we need to request an extension of her Leave Without Pay.

If you have any questions, please feel free to write or call. My number is 702-207-9683.

Thanks,
Bill Livolsi

> On Dec 6, 2017, at 11:06 AM, Marci Henson
> <████████████████████████>

Thanks Bill. Elaine is approved from 43.75 hours of LWOP starting on 12/8/17 at 1:15 pm and ending on 12/15/17 at 5:00pm and she would be expected to return at 8:00am on Monday, 12/18/17. I'm willing to re-evaluate the need for an additional week of LWOP so please check in by noon on the morning of 12/15/17 to give us an update on the progress of the OOD process and to confirm the need for additional LWOP the week of 12/18 – 12/22/17.

There's no need to contact us before noon on 12/15/17 and her absence will be covered by approved LWOP.

Thanks,





; Shawn

ine Go

Ms. McCrary and Ms. Henson,

Thank you for your response. As I understand it, Elaine is
approved for LWOP through Friday, 12/15/17, and would
be expected to return to work on Monday 12/18. Please let
me know if this is incorrect.

How often would you like us to check in? I ask because the
LWOP memo states that requests should be made at least
one week in advance, but our next meeting with OOD will
not occur until Tuesday 12/12. I want to ensure you have
adequate information to judge any potential future requests,
should they be necessary.

Thank you,
Bill Livolsi

On Dec 5, 2017, at 6:25 PM, Elaine Go
<goelainea@gmail.com> wrote:

---------- Forwarded message ----------
From:



Hi Elaine

Hi Elaine,

I have attached the response to your recent LWOP request.

Thanks,
Shawn ext.1626



ber 29, 2017 5:59

Elaine,

I have attached a copy of the LWOP request memo. Additionally, please see the information below regarding LWOP.  Thanks.

### Leave Without Pay

Specific to leave without pay (LWOP), please be advised of the following:

• Any period during which an employee is on leave of absence without pay for over a period of 21 consecutive calendar days in a calendar year will be deducted from the employee's creditable service for longevity pay; and

• An employee on a leave of absence without pay for over 30 consecutive calendar days will be required to pay the entire medical insurance,  life insurance, and long-term disability insurance premiums in order to continue coverage in those plans; and

• Employees on a leave of absence without pay will not accrue vacation, sick leave, or retirement credits during any such leave

period.



Accommodations

Elaine,
Thank you for the heads up that you might be requesting LWOP if you exhaust your FMLA leave before you receive a determination on your accommodation request.  Please refer to Article 25 of the CBA and Section 5.6 of the Department's Time and Attendance Policy when the time comes and you're making your specific LWOP request.  While I understand from your email below that your condition is prone to flare ups and you may exhaust your FMLA leave and it may take an additional 2-4 weeks to receive a decision from OOD, I'll need a more specific LWOP request. Shawn will send you a template LWOP memo that you can use to make your specific request.

The DTAP states employees shall make every effort to submit LWOP requests at least one week before the requested start of any period of continuous absence that would include LWOP.  As the DTAP states in Section 4.4, it is the employee's responsibility to accurately track leave balances and for submitting leave requests so please monitor your FMLA leave balance and submit the specific LWOP request approximately one week before your requested start date for LWOP.

When we receive your specific request, we'll review it and I will make a timely decision.  Please let me know if you have any questions.

Thanks,



**From:** Elaine Go
**Se**



Accommodations

Marci and Ted,

I am currently pursuing disability accommodations from the Office of Diversity. I have been working on this request since September, but have encountered delays. OOD has indicated that a typical request at this stage takes an additional 2-4 weeks to process and implement. I have asked OOD to expedite the process, but I am concerned that I may exhaust my FMLA leave before my accommodation request has been processed and implemented.

I expressed this concern to OOD and they indicated that I should work with my department, so I am now writing to you. My disability is prone to unpredictable flare-ups. Should a flare-up occur between today and the implementation of my disability accommodations, I ask that you use any discretion you have to allow some flexibility regarding LWOP or other unpaid leave. Thanks.

<image001.jpg>
Elaine Go
Air Quality Specialist II

Exhibit L



Hi Bill, thank you for your patience in this matter.  I had an opportunity to review the overall information evaluated as part of Ms. Go's 2017 ADA accommodation request(s) as I communicated to you that I would.  Based on my review of the overall information including the information obtained/discussed in our November  13, 2018 meeting, the information obtained from the previous interactive meetings, and the medical information on file, I have reached the same determination, specifically, that while Ms. Go does have an impairment, it does not rise to the level of a disability under the ADA, as she is not substantially limited in a major life activity.

If you disagree with this decision and/or if you believe that Ms. Go has been discriminated against, please contact NERC at (702) 486-7161 and/or the EEOC at (702) 388-5099.

If anything medically changes in the future, please don't hesitate to contact our office for a re-assessment.

If you have any questions, please don't hesitate to contact me.

Thank you Bill.



Thank you, Letty.

Bill Livolsi

On Nov 28, 2018, at 3:01 PM, Letty Bonilla ████████████████> wrote:

> Hi Bill, I apologize for my delayed response and because I did not get back to you when I said I would.....thank you for following up.  If you can please allow me until the end of this week to get back to you I would appreciate it.
>
> Thank you.
>
> *Letty Bonilla*
> *Manager, Office of Diversity*

*Manager, Office of Diversity*
*Clark County*
*(702) 455-4667*



Ms. Bonilla,

It's been two weeks since we met, so I'm checking in. I know you asked for some time to review Elaine's file, but I was wondering if you could give me an estimated timeline for completion of your review.

Thank you,
Bill Livolsi
on behalf of Elaine Go


On Nov 14, 2018, at 1:31 PM, Bill Livolsi <wlivolsi@gmail.com> wrote:

Letty,

Yesterday, you acknowledged that Elaine does have a medical condition and that thinking, communication, and work were all major life activities. However, you stated that, as Elaine's panic attacks were mainly triggered by her supervisor, they were therefore not due to a disability.

Please see the attached PDF, especially Ted Lendis's email of 11/1. In this email thread, Ted Lendis points to a perceived communication issue between Elaine and two of her Senior permit writers. Up until this point, Elaine's supervisor had not been involved in the situation.

As you can see, Elaine's medical condition (Panic Disorder) is substantially limiting one or more major life activities (ability to think/communicate clearly) before Elaine's supervisor becomes involved in the conversation. While Elaine's supervisor's comments then triggered a panic attack, the underlying communication limitation existed before he intervened.

This is an example of the point I was trying to make yesterday. **While Elaine's supervisor may trigger panic attacks, the underlying disability causes the substantial limitations independent of his involvement**. Elaine's supervisor does not CAUSE panic attacks. Panic attacks, and the substantial

**limitations linked to them, are caused by panic disorder.**

Elaine's colleagues, who also report to her supervisor, are not similarly affected by performing the same job under the same supervisor in the same office. This is because Elaine's colleagues do not have Panic Disorder and therefore do not have an underlying substantial limitation to communication. Therefore, Elaine's disability is causing her to experience unequal workplace opportunities, which is why we asked the Office of Diversity to grant accommodations.

You may also consider this example: if Elaine had lost her hearing, but were good at reading lips, she might be able to work effectively for several years. However, if Elaine's supervisor then began covering his mouth when he spoke, and stopped giving instructions in writing, Elaine might request accommodations.

This would be an example of a disability that can be triggered, or exacerbated, by a specific individual's actions, but is not caused by that individual. Elaine's Panic Disorder functions in a very similar way, which is what Elaine's medical certification attempted to clarify.

I therefore reiterate the point I made yesterday: Elaine is a qualified individual with a disability, who experiences a substantial limitation to one or more major life activities. This condition exists independent of Elaine's supervisor. The Office of Diversity therefore must grant Elaine accommodations for her disability.

Thank you,

Bill Livolsi
on behalf of Elaine go

<20181103 silver state lendis.pdf>

On Nov 9, 2018, at 2:39 PM, Letty ███████████████ wrote:

Correction.....**Tuesday, November 13th at 9am.**



I will plan for **Tuesday, November 8th at 9am**.

Thank you.

*Letty Bonilla*

Hi Letty,

Tuesday works. I can be there around 9:00. Thanks.

Bill Livolsi
On behalf of Elaine Go

On Nov 8, 2018, at 1:16 PM, Letty Bonilla ▮▮▮▮▮▮▮▮▮▮▮
wrote:

> Hello Elaine, please be advised that Ms. Kathleen Rodriguez is no
> longer working in the Office of Diversity.  Please direct any future
> communications directly to me.  Thank you.
>
> As to your request to meet with an OOD representative in regard to
> concerns about your previously submitted request for an ADA
> accommodation **and** to discuss your current accommodation needs,
>  I'm available as follows:
>
> **Tuesday, November 13th** through **Thursday, November 15th** in the
> morning from 8am to 10am.  Please let me know if any of these
> dates/times work for you so we can schedule a meeting accordingly.
>
> *(Please be advised that it may be necessary to request additional*
> *medical information*.)
>
> Thank you.
>
> *Letty Bonilla*
> *Manager, Office of Diversity*
> *Clark County*

*(702) 455-4667*



Ms. Rodriguez,

I did not request an intake packet. The details of Elaine's medical condition have not changed significantly since her first accommodation request.

I am requesting a meeting, as soon as possible, to discuss why Elaine's accommodation request was denied and further discuss the urgent need to accommodate Elaine's disability under the ADA.

Please let me know your availability.

Thank you,
Bill Livolsi
on behalf of Elaine Go

Exhibit M



LB

Hello Bill, thank you for your continued patience in this matter.  This email serves as a follow up to our April 23, 2019 meeting.  The meeting stemmed from information you brought forth and wanted to present for reconsideration of OOD's 2017 determination that Elaine Go did not meet the definition of a person with a disability.    The new information you presented was that Elaine's condition persists despite working under a different supervisor.  Again, you requested that this information be considered and evaluated for reconsideration of OOD's determination as previously stated.  I agreed to meet with you to discuss the updated information despite not having updated medicals **but** it was explained to you that it may be necessary to request updated medicals in order to proceed with a reassessment.  During our discussion on April 23, 2019, you indicated, however, that medically nothing has changed and that Elaine's doctor would question why new information would even be requested because nothing has changed.

Please know that I reviewed the medical information on file including the new information presented, i.e., that Elaine's condition persists despite working under a different supervisor (and other information discussed in our meeting).  As previously communicated to you Bill, there is no question that Elaine has a medical condition, which according to you continues to persist despite a different supervisor.  Nonetheless, the question is whether her condition substantially  limits her in a major life activity.  The new information does change that determination.  Nonetheless, you are welcomed to submit updated medical information for re-evaluation if something medically changes.

Thank you.

*Letty Bonilla*
*Manager, Office of Diversity*

Ms. Bonilla,

Do you still plan to have an answer for us today, as per your email of June 4?

Thanks,
Bill Livolsi

On Jun 4, 2019, at 5:11 PM, Letty Bonilla ███████████████████████ > wrote:

Hi Bill, I appreciate your continued patience in this matter. I did receive your emails mentioned below requesting for status update….my apologies for not having responded. It has taken me longer than I expected to get back to you but I want to make sure that I thoroughly review all of the information you provided on April 23, 2019 (including information on file). At this point Bill, I'm asking that you please allow me till the end of next week to get back to you with an answer as to this matter (*my goal will be sooner nonetheless*).

Thank your understanding. If you would like to discuss, please feel free to contact me.



---



Ms. Bonilla,

It has now been six full weeks since our meeting. I have not received any update from you on the status of Elaine Go's disability accommodations.

I previously emailed you on May 24th and May 13th to ask for updates, but did not receive responses.

Can you please give me an update on the Office of Diversity's progress so far?

Sincerely,
Bill Livolsi

On A  V.gov> wrote:

I will

---

Ms. Bonilla,

OK, I will see you at 3PM. As I previously stated several times, Elaine has no leave available. I will be meeting with you on Elaine's behalf and holding her Power of Attorney. Elaine will not be present.

Thank you,
Bill Livolsi

On Apr 23, 2019, at 9:32 AM, Letty Bonilla <​ gov> wrote:

Hello Bill, I can meet with you and Ms. Go today 3pm.  Thank you.





On Apr 19, 2019, at 4:49 PM, Letty wrote:

I have a 10am already scheduled.



I would prefer something in the morning- say 10am? Let me know. Thanks.

On Apr 19, 2019, at 4:37 PM, Letty Bonilla ██████████████████ > wrote:

Bill, I've been in and out of the office and I'm scheduled off on Monday and have meetings on Tuesday but I can make myself available Tuesday afternoon. Will Tuesday afternoon work?



██████████████████████ know. Thank you.

On Apr 19, 2019, at 4:34 PM, Letty ███████████████████████
wrote:

Hi Bill, can we meet next Wednesday, April 24th in the afternoon at 3pm? Let me know if this works so that I can put it on my calendar. Thank you.

*Letty Bonilla*
*Manager, Office of Diversity*
*Clark County*
*(702) 455-4667*

Hi Letty,

I am available to meet at your earliest convenience, including later today and all day tomorrow. Please let me know your earliest availability.

Thank you,
Bill Livolsi

On Apr 15, 2019, at 8:37 AM, Letty ████████████████████████

wrote:

> Hi Bill, as stated in my email to you dated February 19, 2019, we can schedule a meeting to discuss the new information you shared with me regarding *"....even when removed from the person 'causing' the condition, Elaine's condition has persisted"*.    Please let me know when will be a good date/time.
>
> Thank you.





Ms. Bonilla,

Please at least confirm receipt of the email below.

Thank you,
Bill Livolsi

On Apr 9, 2019, at 8:16 PM, ███████████████ wrote:

Ms. Bonilla,

This afternoon I spoke to Darrell Harris, Supervisory Compliance Inspector at the Nevada Equal Rights Commission, about Elaine Go and her accommodation request.

According to Mr. Harris, NERC's position is that, based upon the evidence presented, <u>Elaine Go is a qualified individual with a disability under the definition provided in the Americans with Disabilities Act.</u>

Please note that NERC received the exact same medical certification that we provided to the Office of Diversity in November 2017.

Elaine Go is therefore eligible for disability accommodations using the November 2017 medical information we provided to OOD.

NERC further states that moving Elaine's cubicle away from her supervisor constituted an accommodation, as did the granting of FMLA leave.

Elaine wishes to inform the Office of Diversity that the provided accommodations are insufficient. She again asks the Office of Diversity to continue the interactive process by evaluating the other accommodations she requested in November 2017.

We ask that you immediately inform the Department of Air Quality that OOD's previous determination was incorrect.
We also ask that you immediately reopen Elaine Go's accommodation request so additional accommodations can be provided.

Please let me know exactly how you wish to proceed. If you need time to consider your response, please respond immediately to confirm receipt of this email and provide a timeline for a full response.

Sincerely,
Bill Livolsi
on behalf of Elaine Go

On Apr 3, 2019, at 12:10 PM, Bill ███████████████
wrote:

Ms. Bonilla,

I never received a response to this. Why does OOD require updated medical information from Elaine?

Thanks,
Bill Livolsi

On Feb ████████████████████
████████████████████

Ms. Bonilla,

I understand. However, my question was: *why* does OOD need updated medicals?

Thanks,
Bill Livolsi

████████████████████████

Hello Bill, as previously stated, we can schedule a meeting to discuss the new information you reference in your email below. But, please keep in mind that in light of the new information, we will need updated medicals in order to complete a reassessment of Ms. Go's Request for accommodation.

Let me know if you want to proceed with the meeting.

Thank you.

*Letty Bonilla*
*Manager, Office of Diversity*
*Clark County*
*(702) 455-4667*

Ms. Bonilla,

In what way is Elaine's last medical certification lacking? I have attached a copy for your reference.

Please respond as soon as possible.

Thank you,
Bill Livolsi
on behalf of Elaine Go

Hello Bill, hope that you are doing well.  In light of your statements below "...*even when removed from the person "causing" the condition, Elaine's condition has persisted"* **and** wherein you further state *that this should constitute new or updated medical information*, I would like to meet with you and Ms. Go to discuss this but please understand that our Office will need updated medicals in order to complete a re-assessment of Ms. Go's request for an accommodation.  Please let me know when it is a good date/time to meet to discuss the new information you present below.

Thank you.

Elaine Go

Letty,

Please let me know if you will be re-evaluating Elaine's claim in light of the clarifications I made in my last email. Thank you.

Regards,

On Jan 28, 2019, at 9:54 AM, Bill Livolsi

Ms. Bonilla,

As we discussed when I met with you on November 13, 2018, OOD believes that Elaine does not have a disability because, despite having a medical condition that substantially limits one or more major life activities, you feel that the condition is "caused" by the situation at work, specifically Elaine's supervisor. At the time, I stated that Elaine's condition is caused by the underlying medical problem, while the situation at work only serves to trigger it.

My most recent email of January 17, 2019 demonstrates this conclusively. Elaine was assigned to a different supervisor on January 3, 2019. This supervisor has no history of conflict with Elaine and by all accounts they get along well. However, Elaine's panic attacks have persisted. This shows that the Office of Diversity's assessment is incorrect — even when removed from the person "causing" the condition, Elaine's condition has persisted. **This should constitute new or updated medical information and should therefore cause the Office of Diversity to re-assess Elaine's qualification under the Americans with Disabilities Act.**

Elaine has stated several times that she would be more than capable of performing her job from home on

than capable of performing her job from home on certain days when her condition flares up. Because of OOD's decision, this option is not available, and Elaine is forced to use FMLA instead. This results in lost work time, depletion of Elaine's FMLA balance, and lost pay. An accommodation would be beneficial not only to Elaine, but also to DAQ. However, OOD is unwilling to discuss potential accommodations, because you maintain that Elaine is not disabled.

Elaine has nearly depleted her FMLA for the year. She currently has 34 hours remaining in her allotment, at which point she will not be entitled to any additional leave until September 2019. DAQ management have stated several times that any requests for Leave Without Pay (LWOP) will be denied. Elaine has already used Catastrophic Leave this year, and even if this option were available, DAQ management is still allowed to deny the underlying LWOP request. Elaine is likely to face discipline or termination if accommodations are not granted.

In December 2017, DAQ Director Marci Henson stated that her decision to deny Elaine's LWOP requests is directly linked to OOD's assessment that Elaine is not disabled. Therefore, OOD's decision has not only denied Elaine the accommodations she is entitled to, but also altered the perception of DAQ management and caused significant harm to Elaine.

I ask that you consider my email of January 17, 2019 as updated medical information. Elaine has already provided two medical certifications from her physician. She does not have the resources to obtain a third — she has very little FMLA leave remaining, has not accrued sufficient PTO to see her physician, and cannot afford to pay for updated ADA paperwork due to missing 3 months of pay while on FMLA leave. Obtaining another signed ADA packet would constitute a hardship.

You previously stated that we are welcome to appeal your decision to the Nevada Equal Rights Commission. With respect, this is not a realistic option for Elaine or other County employees who are struggling to keep their jobs. Elaine appealed to NERC in October 2017, and NERC was unable to assign an investigator until October 2018. That investigation is

still ongoing. By asking employees who are already struggling to wait more than a year for a second opinion, you are doing irreparable harm and causing a hardship for employees who assert their rights under the Americans with Disabilities Act.

Please consider the information above and get back to me as soon as possible. If you do not feel you are able to evaluate Elaine's information impartially, I encourage you to assign the case to other personnel.

Thank you,
Bill Livolsi
on behalf of Elaine Go

On Jan 25, 2019, at 6:14 PM, Letty Bonilla <B> wrote:

Hello Bill, I apologize for my delayed response to your email communication below. Please know that if Elaine has any new or updated medical information, please submit directly to me and/or Office of Diversity (OOD) for evaluation. As previously communicated to you, OOD's assessment of Elaine Go's request for accommodation and OOD's determination was made in part based on the medical information that we currently have on file up to this point. Therefore, if there is no new or updated medical information for evaluation, I encourage you to please continue to work with Risk Management in regard to FMLA and/or other leave options that may be available and/or Elaine's department administration as may be necessary.

As always, if you have any questions or wish to speak to me, feel free to give me a call.

Thank you.

Letty Bonilla
Manager, Office of Diversity
Clark County
(702) 455-4667

-----Original Message-----



Ms. Bonilla,

I am writing on behalf of my wife, Elaine Go, an employee of the Clark County Department of Air Quality. You previously decided that Elaine's medical condition did not qualify as a disability due to its connection to her supervisor.

Elaine has been assigned a new supervisor since the beginning of this year. The panic attacks have persisted. Elaine has now nearly depleted her FMLA allowance for the year and has been using her sick and vacation leave as quickly as it is accrued. If this continues, she will not be able to attend necessary treatment appointments due to lack of available leave.

I ask, again, that you revisit your decision to deny Elaine the disability accommodations she has sought since September 2017.

Regards,
Bill Livolsi

<20171108 return-work-ada.pdf>